CLOWERS *v.* CLEMONS.

No. 12108. JANUARY 11, 1938. REHEARING DENIED FEBRUARY 17, 1938.

*L. D. Moore* and *J. B. Jackson,* for plaintiff.
*Thomas A. Jacobs,* for defendant.

Mrs. Bessie Clowers filed a statutory action for recovery of land against S. C. Clemons. Upon the trial, after the introduction of evidence by both parties, the judge directed a verdict in favor of the defendant. A motion for new trial was overruled, and the plaintiff excepted. Both parties claimed title under George Clowers, the deceased husband of the plaintiff. She claimed under, and introduced in evidence, a judgment of the court of ordinary of Bibb County, awarding to her the land in question as a year's support, dated April 6, 1936. The defendant claimed under a deed executed to him by the sheriff of Jones County on June 4, 1935, pursuant to a levy of an execution dated June 23, 1930, based on a common-law judgment in favor of S. C. Clemons against George Clowers, in the city court of Macon. The execution was levied on the land in question on September 5, 1930, and a claim to the land was filed by J. B. Jackson as attorney at law for Minnie Dorsey, a daughter of George Clowers, the claim being based on a deed from the father to the daughter, dated November 13, 1935, reciting a consideration of $3,000. This deed was "signed, sealed, and delivered in the presence of" two witnesses, one of whom was a notary public, and was recorded the day it was executed. J. B. Jackson testified: "George Clowers represented to me that he was indebted to Minnie Dorsey for $3,000, and got me to write the deed to Minnie Dorsey. I filed claim to the land in the name of Minnie Dorsey by request and direction of Clowers, claiming to represent Minnie Dorsey. I never saw Minnie Dorsey. She did not employ me in any way. I never had any communication with her. Everything I did was by direction and request of George Clowers. . Some years later George admitted to

me that Minnie Dorsey had nothing to do with it and did not know anything about it, and then I talked pretty rough to him." After this claim was interposed, Clemons filed an equitable amendment in aid of the levy, in which the deed to Minnie Dorsey was attacked as having been made to hinder, delay, and defraud creditors of the grantor, including the plaintiff in fi. fa., it being alleged that said deed was executed without consideration, without the knowledge of the grantee, was never delivered to her, and she did not know of its execution, and possession of the property remained in George Clowers. The trial of the claim case resulted in a verdict in favor of the plaintiff, and judgment was entered that "said land is adjudged and decreed to be the property of George Clowers, subject to the execution of S. C. Clemons." The jury having also found that the deed from George Clowers to Minnie Dorsey was void, said deed was "adjudged and decreed void and passes no title to Minnie Dorsey, and same is adjudged void and canceled. Whereupon it is considered, ordered, and adjudged that said property is the property of George Clowers, subject to the execution of S. C. Clemons; and it is ordered that said execution proceed and that the property levied upon is subject thereto." Minnie Dorsey testified that she lived in Tampa, Florida, during the year 1929; that George Clowers was her father; that she knew nothing of the execution of the deed in 1929 until the first part of 1934; that she never owned or claimed to have control of any land in Jones County, and never received the deed. Also: "I never filed a claim in Jones superior court to any land in Jones County, nor did I ever authorize any one else to file a claim in my name, . . and I did not know that a claim had been filed in my name to any land in Jones County. . . I was never advised by George Clowers or Bessie Clowers that a deed had been made to me to the land, or that a claim had been filed in my name to any land in Jones County.".

In his answer Clemons alleged: "Subsequent thereto [the filing of the claim by Minnie Dorsey] one E. L. Cox of Macon obtained a judgment against Minnie Dorsey, and then Bessie Clowers and George Clowers made a full disclosure to defendant of the fraud, and agreed to assist to set aside the deed to Minnie Dorsey, and the claim was tried in Jones superior court, and a decree of court was taken declaring the deed to Minnie Dorsey fraudulent and

void as to the defendant S. C. Clemons, and decreeing the property to be subject to defendant Clemons' execution, and allowing the levy and sale to proceed as to this property. This decree voided the deed only as to defendant, and defendant alleges that both Bessie Clowers and George Clowers were forever estopped by their conduct and fraud to ever assert any title to this property in their own right, and the transaction was set aside only to enable defendant to levy his judgment." Minnie Dorsey testified: "Yes, in 1925, certain property on Telfair Street, in Macon, was purchased from Willingham. I helped to pay for this property, and my recollection is that the deed was made to me. Yes, I did borrow $500 from E. L. Cox, and gave him a mortgage or loan deed on the property, and this was the first part of 1930. I do not remember the time, but I know that Cox foreclosed his mortgage and took the property. I do not know anything about Cox trying to levy on my land in Jones County. About the first of 1934, George Clowers and Bessie Clowers did write about the Jones County land, and sent me an affidavit to sign. I do not remember their writing me that they preferred, or hoped, to have the Jones County property applied on the Clemons debt instead of the Cox debt. . . I did make an affidavit in which I said I was not the owner of the two tracts of land in Jones County, Georgia, that the deed was never delivered to me, and that I did not have anything to do with this land." The defendant introduced in evidence an affidavit of George Clowers, dated October 23, 1933, reciting "that he is the owner of two tracts of land (being same land involved in this case) ; that Minnie Dorsey does not own the property; that he made deed, but she paid no money. The deed was merely voluntary and never delivered. She never had possession. He made the deed in an effort to save property from sale to pay debts and to delay his creditors and the judgment of Clemons until he could make payment; that Minnie Dorsey had no title, paid nothing, and knew nothing about the deed, and none was ever delivered." Bessie Clowers, the plaintiff, testified: "I was married to George Clowers on the 28th day of September, 1931. George Clowers died on May 17, 1935. I did not know anything about the deed George Clowers made to Minnie Dorsey to land in Jones County. I did not have anything to do with it. I had nothing whatever to do with anything George Clowers did to defeat his creditors, and did

not know anything about it." Clemons testified that he had paid certain taxes on the property for the years 1932, 1933, 1934, and 1935, and as to amounts expended by him for repairs to buildings on the property, and that "Bessie Clowers told him that George Clowers made deed to Minnie Dorsey, to try to save the property from levy, and that man Cox was trying to levy on it, that she would rather Clemons have it than Cox, and to stop Cox." He also testified that he knew George Clowers was dead at the time he bought the land at sheriff's sale in June, 1935.

RUSSELL, Chief Justice. · 1. It appearing from the record that the defendant in fi. fa., George Clowers, died on May 17, 1935, and that at the time of his death he was in possesion of the property in dispute in this case, and that thereafter the plaintiff filed an application for a year's support, whereupon appraisers were appointed who set apart the land in dispute as a year's support, and citation was issued and published as provided by law, and, no objection being filed, the report of the appraisers was made the judgment of the court of ordinary on April 6, 1936; and it further appearing from the record that the sale under a common-law fi. fa. in favor of the defendant occurred after the death of the husband of the plaintiff, the sheriff's sale was ineffectual to pass the title as against the right of the widow to a year's support.

2. It appears from the record that a deed was executed by George Clowers to his daughter, and was recorded on the same day it was executed, but that this deed was never delivered to her or to any one authorized by her to receive it, and that the grantor, her father, continued in possession of the land until his death. "The presumption of delivery arising from the due attestation and registration of the deed may be rebutted by evidence tending to show that the maker of the deed retained the actual possession of it and continued to exercise actual ownership over the land therein described." *Morris* v. *Morris*, 171 *Ga.* 642 (2) (156 S. E. 256). In the instant case it was admitted that George Clowers, the defendant in fi. fa., remained in possession of the land in dispute up to the time of his death; and his daughter, the grantee in the deed, swore that the deed was never delivered to her or to any one authorized to receive it for her.

3. "The doctrine that the grantor in a deed made for the purpose of hindering, delaying, or defrauding his creditors, or one

claiming in his right, can not be heard to question the validity of such deed, does not apply where the deed was not in fact delivered." *Lowry* v. *Lowry,* 150 *Ga.* 324 (3) (103 S. E. 813) ; *Morris* v. *Morris,* supra.

4. The doctrine of estoppel has no application to the facts of this case.

5. The court erred in overruling the motion for new trial, complaining of the direction of the verdict for the defendant.

*Judgment reversed. All the Justices concur, except Bell, J., who dissents.*